**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BARBARA FOOTE,**

                **Plaintiff,**　　　　　　5:12-cv-72
　　　　　　　　　　　　　　　　　　　　　　(GLS)
            v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | BRANDON W. SAWYER, ESQ. |
| 300 S. State Street | KAREN S. SOUTHWICK, ESQ. |
| Suite 420 | |
| Syracuse, NY 13202 | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | NOAH M. SCHABACKER |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

---

[1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Barbara Foote challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Foote's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II. Background

On July 21, 2009, Foote filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2005. (*See* Tr.[2] at 53, 112-14.) After her application was denied, (*see id.* at 55-60), Foote requested a hearing before an Administrative Law Judge (ALJ), which was held on November 2, 2010, (*see id.* at 26-47, 61-63). On February 11, 2011, the ALJ issued an unfavorable decision denying the requested

---

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 15.)

2

benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 8-25.)

Foote commenced the present action by filing her Complaint on January 17, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 13, 15.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 18, 20.)

### III. <u>Contentions</u>

Foote contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 18 at 10-23.) Specifically, Foote claims that: (1) the ALJ failed to properly develop the record; (2) the residual functional capacity (RFC) determination is unsupported by substantial evidence and is the product of legal error; (3) her credibility was improperly assessed; and (4) the step five determination is unsupported by substantial evidence. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 20 at 11-

19.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 18 at 2-8; Dkt. No. 20 at 1-8.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Duty to Develop the Record

Foote argues first that the ALJ violated his duty to develop the record by failing to order a consultative intelligence evaluation. (*See* Dkt. No. 18 at 10-11.) The court does not agree.

---

[3] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

4

While the ALJ has an affirmative obligation to develop the administrative record, his duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make his determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative intelligence exam is warranted. *See* 20 C.F.R. § 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

Here, because the record was sufficiently robust for the ALJ to make a disability determination, he was not obligated to further develop the record by ordering a consultative intelligence examination. *See Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y.

Apr. 26, 2011). In particular, in December 2008, Foote was examined by Dr. L. India Ivory at Syracuse Community Health Center, who noted that Foote suffered from a significant recent and remote memory disturbance. (*See* Tr. at 196.) However, Dr. Ivory also noted that Foote's thoughts were logical and coherent, thought process was clear, attention span was satisfactory and fund of knowledge was adequate. (*See id.*) Moreover, the record contains the opinion of consultative examiner Dennis Noia, who assessed Foote's functional limitations. (*See id.* at 233-36.) Dr. Noia estimated Foote's intellectual functioning to be in the borderline range and found her recent and remote memory skills mildly impaired. (*See id.* at 235.) Dr. Noia went on to opine, however, that Foote is capable of understanding and following simple directions, performing simple and some complex tasks, sustaining attention and concentration, learning new tasks, making appropriate decisions, and marginally capable of managing money. (*See id.* at 235-36.) Ultimately, as the ALJ had before him substantial evidence that enabled him to render a decision with respect to Foote's nonexertional impairments, the court is satisfied that further development of the record was unnecessary. *See Serianni v. Astrue*, No. 6:07-CV-250, 2010 WL 786305, at *5 (N.D.N.Y Mar. 1, 2010).

**B. RFC Determination**

Next, Foote claims that the RFC determination is infirm because: (1) the ALJ failed to afford controlling weight to her treating physician's opinion and provided inadequate explanation in support of his decision to afford it little weight; and (2) the RFC determination is "inconsistent with [the ALJ's] stated rationale." (Dkt. No. 18 at 13-16.) The Commissioner responds, and the court agrees, that the RFC finding is supported by substantial evidence[4] and was arrived at by properly applying the relevant legal principles. (*See* Dkt. No. 20 at 12-14.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012). If it is, that determination is

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted)

7

conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, Foote's treating physician, Dr. Stephen Robinson, opined that, in an eight-hour workday, Foote could sit for less than two hours, but for only twenty minutes at one time, and stand or walk for two hours, but could only walk for one and one half city blocks and stand for ten minutes at one time. (*See* Tr. at 263.) Further, according to Dr. Robinson, Foote could only lift and carry less than ten pounds rarely and could never twist, stoop/bend, or climb ladders, but could rarely crouch or squat and occasionally climb stairs. (*See id.* at 264.) Finally, Dr. Robinson opined that Foote would be off task for more than twenty percent of an eight-hour workday and would miss more than four days per month on average as a result of her impairments. (*See id.*) After acknowledging that Dr. Robinson was Foote's "primary treating physician," the ALJ gave little weight to this opinion because it was not supported by objective medical evidence and was inconsistent with the other evidence of record. (*Id.* at 18.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c). Controlling weight will be given to a treating physician's opinion that is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 416.927(c).

In this case, although the ALJ did not methodically discuss each individual factor, it is clear that he properly applied section 416.927(c). Initially, it is evident from the ALJ's reference to Dr. Robinson as the primary treating physician that the nature and duration of his treatment relationship with Foote was properly considered. (*See id.* at 18.) In addition, the ALJ undertook a thorough discussion of the medical evidence of record which suggested impairments less severe than those articulated by Dr. Robinson. (*See* Tr. at 18-19.) Specifically, Dr. Robinson consistently noted in treatment records that Foote's motor strength was intact, reflexes were normal, and straight leg raising tests were negative.

9

(*See id.* at 211, 214, 229-30, 274-75, 278-79, 281, 284-85, 288-89, 291, 308, 313.) Further, Foote walked comfortably, without any assistive devices, and could climb onto the examination table. (*See id.*) Finally, on numerous occasions Dr. Robinson noted that the range of motion of Foote's lumbar spine was either full and normal, or only moderately limited. (*See id.* at 211, 214, 229, 274-75, 278, 281, 284, 288.)

The ALJ also considered the opinion of Dr. Kalyani Ganesh, who conducted a consultative examination of Foote in October 2009. (*See id.* at 238-41.) Dr. Ganesh found Foote to be in no acute distress, with a normal gait and stance. (*See id.* at 239.) Foote was able to walk on her heels and toes, change for the exam, get on and off of the exam table, and rise from a chair without difficulty. (*See id.*) Upon examination, the range of motion in Foote's lumbar spine was full, strength was 5/5 in her upper and lower extremities, straight leg raising tests were negative, and she suffered no motor or sensory deficit. (*See id.* at 240.) Dr. Ganesh opined that Foote had no gross physical limitations in her ability to sit, stand, walk, or use her upper extremities. (*See id.*) Although the ALJ afforded Dr. Ganesh's opinion little weight because other evidence of record demonstrated that Foote suffers from some limitations, her opinion

10

supports the ALJ's determination that Foote could perform the exertional requirements of sedentary work.  (*See id.* at 18-19.)

Ultimately, the ALJ's assessment of Dr. Robinson's opinion is legally sound and supported by substantial evidence.

Foote also argues that the ALJ erred in finding that Foote had the RFC to perform simple, routine, low stress tasks with limited public contact because Dr. Noia indicated that she could interact with others only moderately well.  (*See* Dkt. No. 18 at 15-16.)  According to Foote, as the ALJ afforded Dr. Noia's opinion "significant weight," he should have found that Foote was limited in her ability to interact with co-workers and supervisors as well as the general public.  (*Id.* at 15.)  The court disagrees.  Contrary to Foote's argument, the ALJ's determination does not conflict with Dr. Noia's assessment but, rather, is supported by it.  (*See id.*)  In addition to finding that Foote could "relate to and interact moderately well with others," Dr. Noia found Foote to be "capable of performing simple and some complex tasks with supervision and independently."  (Tr. at 236.)  Thus, the ALJ's RFC determination is supported by substantial evidence.

## C.     **Credibility Determination**

Foote also asserts that the ALJ erred in assessing her credibility.

(*See* Dkt. No. 18 at 16-19.) Specifically, Foote claims that the ALJ's credibility determination is not supported by substantial evidence because the ALJ: (1) mischaracterized her activities of daily living and improperly considered the credibility implications of such activities; (2) failed to discuss factors relevant to her credibility, including the activities that aggravate her symptoms and the medication she has taken and its side effects; (3) improperly compared her statements to the RFC determination; and (4) inaccurately recited the facts with regard to her mental impairments. (*See id.*) The court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant]'s statements." SSR 96-7p, 61 Fed. Reg.

12

34,483, 34,485 (July 2, 1996).  Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Here, the ALJ found that Foote's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."  (Tr. at 17.)  The ALJ noted the results of Foote's physical examinations and the fact that she does not use any assistive devices.  (*See id.*)  The ALJ also considered Foote's activities of daily living, including the fact that she is able to care for her personal needs independently, take public transportation, go grocery shopping, do light housework and cooking, and is the primary care giver to her minor child.  (*See id.* at 17-19, 137-40,

13

235.)⁵  Finally, the ALJ considered the opinion evidence of record and Foote's statements that her symptoms improved with medication.  (*See id.* at 18-19.)

Although Foote argues that the ALJ failed to discuss all of the required factors, (*see* Dkt. No. 18 at 18), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004))).  Here, the ALJ explicitly acknowledged that he evaluated

---

⁵ Foote argues that the ALJ failed to acknowledge that she receives help with cooking, cleaning, and shopping, (*see* Dkt. No. 18 at 17), however, she testified at the administrative hearing that she is able to cook for herself and her child and shop at the grocery store, including carrying the groceries from the cart to the car, (*see* Tr. at 35-36).

14

Foote's symptoms based on the requirements of 20 C.F.R. § 416.929, (*see* Tr. at 15), and it is evident from his thorough discussion that his credibility determination was legally sound. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility).

Foote also argues that the ALJ impermissibly determined her RFC first, and then used that RFC to evaluate the consistency of her subjective complaints. (*See* Dkt. No. 18 at 18-19.) It is clear from the ALJ's detailed credibility analysis, however, that his reference to consistency with the RFC determination was merely an indication that the RFC determination incorporated those findings. (*See* Tr. at 17-19.) Finally, according to Foote, the credibility determination is not supported by substantial evidence because the ALJ erroneously stated that Dr. Ivory found Foote's recent and remote memory disturbance to be "not significant" as opposed to "significant." (Dkt. No. 18 at 19.) While it appears that the ALJ misread Dr. Ivory's treatment notes, it cannot be said that the ALJ's credibility determination was based largely on factual errors such that remand would be necessary. (*See* Tr. at 17, 196); *see Horan v. Astrue*, 350 F. App'x 483,

15

484-85 (2d Cir. 2009). Indeed, as discussed above, Dr. Noia found Foote's recent and remote memory skills to be only mildly impaired and it was this finding that the ALJ noted in discounting Foote's complaints of difficulty concentrating. (*See* Tr. at 18.)

In sum, because the ALJ properly weighed "the objective medical evidence in the record, [Foote's] demeanor, and other indicia of credibility," *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted), his credibility assessment is conclusive.

## D. <u>Step Five Determination</u>

Lastly, Foote argues that the ALJ's step five determination is flawed because: (1) it was based on an incomplete hypothetical; and (2) the testimony of the vocational expert (VE) was inconsistent with the RFC determination and the U.S. Department of Labor's Dictionary of Occupational Titles (DOT). (*See* Dkt. No. 18 at 20-23.) This argument is also unavailing.

In making his ultimate disability determination, the ALJ must consider whether the claimant can do any other, less demanding work existing in the national economy. *See* 20 C.F.R. §§ 416.920(g), 416.960(c); *accord White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). If the

ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE. *See Mancuso v. Astrue*, 361 F. App'x 176,179 (2d Cir. 2010). In addition to the RFC assessment, the ALJ must also rely on the claimant's age, education, past work experience, and the transferability of the claimant's skills in order to assess whether other jobs exist in the national economy which the claimant could perform. *See* 20 C.F.R. § 416.920(g).

In questioning the VE in this case, the ALJ's hypothetical question—which accounted for, among other things, a person of Foote's age, education, and work background, who could, in an eight-hour work day, sit for six hours and stand and walk for two hours with a sit/stand option, lift and carry up to ten pounds occasionally, and was limited to simple, routine, low stress tasks, with limited public contact—accurately reflected his RFC assessment and credibility determination which, as discussed above, were supported by substantial evidence. (*Compare* Tr. at 15, *with id.* at 42-43.) As a result, the ALJ's use of the VE's opinion was appropriate. (*See id.* at 20.) Foote's argument that the VE's testimony conflicted with the DOT is meritless. (*See* Dkt. No. 18 at 22.) Specifically, the jobs testified to by the VE are classified as sedentary work, requiring the ability to "exert[ ten]

17

pounds of force occasionally . . . and/or a negligible amount of force frequently." Dictionary of Occupational Titles, Code 209.587-010, 1991 WL 671797 (4th ed., 1991); Dictionary of Occupational Titles, Code 249.587-018, 1991 WL 672349 (4th ed., 1991); Dictionary of Occupational Titles*,* Code 379.367-010, 1991 WL 673244 (4th ed., 1991); (*see* Tr. at 43-44.) Such a requirement was not precluded by the exertional limitations in the hypothetical posed to the VE. (*See* Tr. at 42-43.) Finally, although Foote claims that her nonexertional limitations preclude two of the three jobs testified to by the VE, the finding of one job is sufficient to demonstrate that there is other work that she could perform. *See* 20 C.F.R. § 416.966(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008). As such, the ALJ's finding at step five is affirmed.

### E. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin,

18

Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Foote's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 25, 2013
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court